U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

NOV 0 2 2009

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JEROME WEATHINGTON<br>BOP# 08121-028 | DOCKET NO. 09-CV-705; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| UNITED STATES FEDERAL BUREAU<br>OF PRISONS, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

Before the Court is the *pro se* complaint of Plaintiff Jerome Weathington, filed *in forma pauperis* and pursuant to <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>[1] on May 18, 2009. Plaintiff names as defendants the Federal Bureau of Prisons ("BOP"), Warden Joe Keffer, Lieutenant Transou, Lieutenant Humphrey, Mrs. Hornsby, Officer Linch, Officer Burtoe, Officer Shannon, Officer Miller, and any officer known or unknown involved in the incident that is the subject of Plaintiff's suit.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### STATEMENT OF THE CASE

Plaintiff alleges that on March 10, 2009, he asked Lt. Transou

---

[1] In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C.A. § 1983.

to let him have a cell to himself. Plaintiff informed Transou that he had argued with his cellmate and was going to fight him. Lt. Transou told Plaintiff that he was not him to another cell. So, when food was being passed out, Plaintiff "jacked the food slot" by sticking his arm through the food slot so it could not be closed, and he demanded to speak with another lieutenant.[2] Lt. Humphrey told Plaintiff that he would speak with Transou, so Plaintiff removed his arm from the food slot. When Officer Jenkins came to pick up food trays, Plaintiff "jacked the food slot" again and gave Mrs. Jones a written request to be separated from his cellmate. Jones asked Plaintiff if he was willing to "cuff up" and Plaintiff said, "yes." Plaintiff and his cellmate were both cuffed and removed from the cell. Plaintiff and the cellmate were escorted to Lt. Transou's office, where Plaintiff spoke with Transou and Lt. Humphrey. Plaintiff warned the officers that if they put him back in the cell with his cellmate, **he was going attack the cellmate and try to spread Hepatitis C to him.** [Doc. #3, p.5,7] Plaintiff states that he announced to "the whole range of inmates" that he

---

[2] Apparently this is not the first time that Plaintiff has "jacked" the food slot in order to get his point across. Plaintiff submitted an administrative remedy form wherein he alleged that on February 13, 2009, his cellmate told the guard that the ice cream on the food cart was for another cell. Plaintiff told the guard that the ice cream was his, and when the guard passed the ice cream through the food slot, it fell to the floor. Plaintiff then "jacked" the food slot by shoving his arm all the way through the slot. Plaintiff complained that the guard grabbed his arm and "tried to break it" after Plaintiff jacked the slot. [Doc. #3-2, p.16] The response from the warden, dated April 9, 2009, indicates that Plaintiff received a disciplinary report for the incident. The officer reported that Plaintiff stuck his arm through the slot, grabbed the officer's arm, and attempted to pull the officer's arm through the food slot. Plaintiff was convicted for the ice cream/"jacking the slot" incident. The warden informed Plaintiff that monetary damages are not available through the administrative remedy process, and that Plaintiff needed to appeal the hearing officer's decision if he wanted to contest the conviction.

2

was going to fight his cellmate. The inmates were placed back in the cell, and Plaintiff attacked his cellmate. Plaintiff claims that the defendants disregarded a serious risk of harm to both inmates by placing Plaintiff in the cell with the cellmate he threatened to attack.

After Plaintiff attacked his cellmate, the guards came in and separated the two inmates. Plaintiff was pulled out of the cell and placed on the floor. He alleges that, while on the floor, an officer put his knee and body weight on Plaintiff's head, which caused Plaintiff's face to hurt. [Doc. #3, p.5] Plaintiff's clothes were cut off of him and he was placed in paper shorts. He complained that his handcuffs were too tight, and the guards did not loosen them until fifteen minutes later. He also alleges that his hand was bent back by one of the guards, which caused some pain.

Plaintiff was placed in a cell by himself for twenty-four hours with only a mattress. After twenty-four hours was up, Plaintiff's property was returned to him and he was given a bed roll. [Doc. #3, p.6] Plaintiff states that he did not receive all of his property, so he filed a BP-8, which was denied within a week. Plaintiff then filed a request for informal resolution on March 16, 2009. Plaintiff demanded $100.00 to replace his missing property (one pair of shower shoes, some pictures, and two Bibles). The response from the Unit Manager stated that all of Plaintiff's

property had been returned to him. [Doc. #3-2, p.3]

Also on March 16, 2009, Plaintiff filed a request for informal resolution attempt claiming that the Special Housing Unit (SHU) Lieutenant violated his right to be free from cruel and unusual punishment. Plaintiff requested compensation in the amount of $25,000. The response, dated March 19, 2009, states that there were no findings that Plaintiff's constitutional rights were violated while housed in the SHU.

Plaintiff states that, on March 25, 2009, Officer Bernard told Plaintiff that he had a disciplinary hearing regarding his attack on the cellmate, but that the hearing officer did not have Plaintiff's paperwork. On April 7, 2009, Plaintiff attempted to make a phone call and learned that he was restricted from telephone use for one year. He was told that he also had one year visitation restriction and one year commissary restriction. [Doc. #3, p.6] Lt. Transou had reported that Plaintiff "refused" the disciplinary hearing on March 25, 2009.

On April 4, 2009, Plaintiff submitted a federal tort claim form for injuries allegedly sustained, as well as for the missing items of personal property. [Doc. #3-2, p.1]

### LAW AND ANALYSIS

1. Federal Tort Claims Act

The FTCA contains an exhaustion provision whereby, before filing suit, the claim must properly be submitted to the

4

appropriate federal agency and **finally denied**. 28 U.S.C. §2675(a). The exhaustion requirement of the FTCA is *jurisdictional*. Plaintiff's SF-95 claim form, dated April 4, 2009, was filed into the record with his complaint. In his complaint, Plaintiff specifically stated that he had not received a response to the SF-95. [Doc. #3, p.2] Because exhaustion for a federal tort claim is jurisdictional and Plaintiff has not received a final denial on his claim, the claim is not properly exhausted and should be dismissed.

II. Excessive Force

Plaintiff complains that officers John Doe #1 and #2 used excessive force in breaking up the fight between Plaintiff and his cellmate. Plaintiff claims that Officer Doe #1 knelt down and put his weight on Plaintiff's head while handcuffing him. Officer Doe #2 bent Plaintiff's hand back while the handcuffs were too tight. Plaintiff alleges that this conduct is "shocking to the conscious of mankind" and a violation of his Eighth Amendment right.

Plaintiff admits that he attacked his cellmate and tried to infect him with Hepatitis C. Plaintiff states that he had to be physically separated from the cellmate and removed from the cell. Plaintiff does not claim that guard slammed him to the ground or hit or kicked him. Rather, Plaintiff states that he was placed on the ground and that the guard put his weight on Plaintiff's head and face as Plaintiff was being handcuffed. Another guard allegedly bent Plaintiff's hand back, which caused Plaintiff some

pain.

"[T]he settled rule [is] that 'the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Hudson v. McMillian, 503 U.S. 1, 5 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). In the context of an allegation of the use of excessive force by a prison official, "the core judicial inquiry is . . . whether force was applied **in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm**." Id. at 7 (emphasis added). "In determining whether the use of force [by a prison guard] was wanton and unnecessary," the court considers "the extent of [the] injury suffered," "the need for [the] application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (citing Whitley, 475 U.S. at 321) (internal quotation marks omitted). The force applied in this case was in the heat of and immediately following an attack by Plaintiff on another inmate. Plaintiff has presented no allegations indicating that the force used was for any purpose other than to restore discipline. Plaintiff's claim that the acts of the guards was "shocking to the conscious of mankind" is conclusory.

Moreover, to support an excessive force claim, a prisoner must have suffered more than a *de minimis* physical injury. See Gomez v.

Chandler, 163 F.3d 921, 924 (5th Cir. 1999). The amount of injury required is directly related to the amount of force that is constitutionally permissible under the circumstances. Williams v. Bramer, 180 F.3d 699, 704 (5th Cir. 1999) (internal citations and quotations omitted). In Siglar v. Hightower, 112 F.3d 191, (5th Cir. 1997), a prisoner was stopped in the hall of his unit while returning from breakfast. The guard found a biscuit in the prisoner's jacket pocket and called for backup. The responding guard, allegedly without provocation, twisted Siglar's arm behind his back and twisted Siglar's ear. Siglar's ear was bruised and sore for three days but he did not seek or receive medical treatment for any physical injury resulting from the incident. The Fifth Circuit affirmed the dismissal of the inmate's complaint, concluding that he had not suffered a "physical injury" under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), because his injury was de minimis under the Eighth Amendment. Id. at 193-94.

Here, Plaintiff claims to have experienced temporary pain to his cheek and hand by the alleged actions of the guards. Plaintiff was examined by Physician's Assistant Charles Tisdale, who noted that Plaintiff's skin was intact and there was no swelling. Plaintiff reported tenderness of his left cheek, but no obvious injuries were noted. Plaintiff's handcuffs were adjusted for comfort. [Doc. #3-2, p.13] Plaintiff was instructed to follow up as needed through sick call. There are no allegations or exhibits

indicating that Plaintiff ever sought additional medical treatment for his cheek or hands. Plaintiff has not alleged an injury that would be considered more than *de minimis*. Plaintiff's excessive force claim should be dismissed.

III. Due Process

Plaintiff complains that his right to due process was violated by the phone, visitation, and commissary restrictions that were wrongfully imposed upon him. He claims that he was not provided and did not refuse a disciplinary hearing. A prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and these will normally consist of deprivations which clearly impinge on the **duration of confinement**. Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995)(quoting Sandin v. Conner, 515 U.S. 472 (1995)).

Plaintiff does not allege a loss of good time credits or any other change in the duration of his confinement as a result of the disciplinary conviction. Moreover, Defendants did not impose upon Plaintiff any atypical or significant hardships. The temporary loss of commissary, visiting, and telephone privileges provides no basis for a claim of the denial of constitutional rights. See Palmisano v. Bureau of Prisons, 258 Fed. Appx. 646 (5th Cir. 2007)(citing Sandin v. Conner, 515 U.S. 472, 484-85 (1995); Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000)(commissary

privileges); Berry v. Brady, 192 F.3d 504, 508 (5th Cir. 1999); Moody v. Baker, 857 F.2d 256, 257-58 (5th Cir. 1988)). Because Plaintiff has not alleged a federally protected due process right in connection with his disciplinary proceedings, there can be no constitutional violation. Plaintiff's claim should be dismissed.

IV. Conditions of Confinement

Plaintiff complains of the conditions in the Special Housing Unit, where he was confined after his fight with his cellmate. Plaintiff alleges that his clothing was cut off of him, and he was placed in paper shorts. Plaintiff was confined to a cell by himself for twenty-four hours with only a mattress. After twenty-four hours, Plaintiff's property was returned to him and he was given a bed roll. [Doc. #3, p.6] "[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions." Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). To establish an Eighth Amendment claim, an inmate must show conditions "so serious as to deprive prisoners of the minimal measure of life's necessities, as when it denies the prisoner some basic human need." Harper v. Showers, 174 F.3d 716, 720 (5th Cir. 1999). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Davis v. Scott, 157 F.3d 1003, 1006 (5th Cir. 1998)(internal quotations omitted).

Plaintiff's complaint that he was confined in the SHU wearing

paper shorts and with only a mattress for twenty-four hours does not reach the level of stating a constitutional violation. Federal courts have held in recent years that deprivation of bedding for a limited period of time is not per se unconstitutional. See Grissom v. Davis, 55 Fed. Appx. 756, 758 (6th Cir. 2003)(seven days without mattress, sheets or blanket not a deprivation of basic human needs and did not cause serious harm); O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 84 (8th Cir. 1996)(sleeping with no mattress or blanket for four days on a concrete slab in cell located 10 feet from exterior door during winter did not deny plaintiff the minimal civilized measures of life's necessities); Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress or blanket for two days not unconstitutional when there was no evidence that inmate suffered any injury or adverse health consequences or that jail officials knew of and disregarded an excessive risk to his health and safety). Moreover, the United States Fifth Circuit has not taken a position that would make it a constitutional violation to temporarily deny bedding or a mattress to an inmate, even a pretrial detainee. Desroche v. Strain, 507 F.Supp.2d 571, 580-81 (E.D.La. 2007).

Finally, as noted above, under §1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury

suffered while in custody without a prior showing of physical injury." The physical injury required by § 1997e(e) "must be more than de minimis, but need not be significant." <u>Harper v. Showers</u>, 174 F.3d 716, 719 (5th Cir.1999) (quoting <u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir.1997)). Plaintiff has not alleged that he suffered an injury from being without his belongings or a blanket for 24 hours.

### **CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's claims be **DISMISSED as frivolous and for failing to state a claim for which relief can be granted under 28 U.S.C. §1915(e)(2)(b).**

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglas v. United</u>**

**Services Automobile Association**, **79 F.3d 1415 (5th Cir. 1996)**.

THUS DONE AND SIGNED at Alexandria, Louisiana, this _____ day of _____, 2009.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE